WAYNE M. CARLIN (WC-2114)
Regional Director

Attorney for Plaintiff
SECURITIES AND EXCHANGE COMMISSION   CV 02 4366
Northeast Regional Office
233 Broadway
New York, New York  10279
(646) 428-1703 (Ellenbogen)

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★  AUG 0 6 2002  ★
BROOKLYN OFFICE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

TRAGER, J.

AZRACK, J.

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | 02 Civ. _____ (  ) |
| ARDIAN FINANCE GROUP, VLADISLAV TARTAKOVSKY, MICHAEL YENINAS, and MICHAEL GREEN, | : | COMPLAINT |
| | : | |
| Defendants, | : | |
| | : | |
| JBS INVESTMENTS, INC., | : | |
| | : | |
| Relief Defendant. | : | |

## COMPLAINT

Plaintiff Securities and Exchange Commission (the "Commission") brings this action against Defendants Ardian Finance Group ("Ardian"), Vladislav Tartakovsky ("Tartakovsky"), Michael Yeninas ("Yeninas") and Michael Green ("Green") (collectively, the "Defendants"), and Relief Defendant JBS Investments, Inc.("JBS").  The Commission alleges the following:

## SUMMARY

1.     From approximately October 2001 through the present, Tartakovsky, the President of Ardian, orchestrated a massive fraudulent unregistered offering of Ardian securities through

which Ardian raised approximately $1.2 million from at least 70 investors (the "Offering").   To

facilitate this Offering, Ardian and Tartakovsky retained Yeninas and Green and other

salespersons to sell Ardian securities to investors.  Ardian, Tartakovsky, Green and Yeninas all

made material misrepresentations to investors to induce them to purchase Ardian securities.

2.     Ardian purports to be in the short-term financing business.  In connection with its

Offering, Ardian provided private offering memoranda ("POM"), which Tartakovsky helped

prepare, to investors.  The POM contained material misrepresentations.  For instance, Ardian

claimed that it had a "matching fund commitment by an unrelated third party financing

institution" to provide additional funds to finance Ardian's operations.   This representation was

false.  Ardian had no such agreement.  In its POM, Ardian also claimed that William Marconi

("Marconi") and Michael Rehzets ("Rehzets") were currently serving as officers and/or directors

of Ardian.  This representation too was false.  To date, neither Rehzets nor Marconi have

performed any functions for Ardian.

3.     In connection with their efforts to solicit investors, Yeninas and Green also

concocted various purported facts, and made material misrepresentations to investors.  Among

other things, Yeninas and Green told investors that (i) Ardian was planning an initial public

offering ("IPO") on a date certain, and (ii) investors could sell their stock when the IPO occurred

at a specific price, which was a significant premium over the price that the investor was paying to

purchase the stock in the Offering.  These representations were false.  In fact, Ardian had not

taken any concrete steps to conduct an IPO.

4.     Yeninas also told investors that Ardian was financing a company involved in the

Ground Zero clean-up following the September 11, 2001 terrorist attacks.  This representation

was false.  Ardian provided no such financing.

5.      Green was not associated with a registered broker-dealer, or otherwise registered as a broker, when he sold Ardian securities to investors.

6.      Through this conduct, and that detailed below, Ardian, Tartakovsky, Yeninas and Green violated Sections 5(a), 5(c) and 17(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77e(a), 77e(c) and 77q(a), and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.  Green also violated Section 15(a) of the Exchange Act, 15 U.S.C. §78o.

7.      JBS improperly received investor funds from Ardian.

## JURISDICTION

8.      The Commission brings this action pursuant to authority conferred by Section 20(b) of the Securities Act, 15 U.S.C. § 77t(a), and Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d), seeking to temporarily restrain, preliminarily enjoin, and permanently enjoin, Ardian, Tartakovsky, Yeninas and Green from engaging in the wrongful conduct alleged in this complaint.  The Commission seeks a final judgment ordering Ardian, Tartakovsky, Yeninas and Green to disgorge their ill-gotten gains and to pay prejudgment interest thereon.  The Commission seeks a final judgment ordering Tartakovsky, Yeninas and Green to pay civil money penalties pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d).  The Commission also seeks temporarily, and during the pendency of this action, an order freezing Ardian's assets, and an order directing Ardian and JBS to provide verified accountings. Additionally, the Commission seeks an order directing Ardian,

Tartakovsky, Yeninas, Green and JBS to provide expedited discovery and prohibiting the destruction, alteration, or concealment of documents. Finally, the Commission seeks all other just and appropriate relief.

9.      This Court has jurisdiction over this action pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), and Sections 21(d), 21(e) and 27 of the Exchange Act, 15 U.S.C. §§ 78u(d), 77u(e) and 78aa.

10.     Venue lies in this district pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), and Section 27 of the Exchange Act, 15 U.S.C. § 78aa. Certain of the transactions, acts, practices and courses of business constituting the violations alleged herein occurred within the Eastern District of New York. For instance, Ardian's office was located in Long Island City, New York. Yeninas and others used the telephones to solicit members of the public to invest in Ardian from this Long Island City office.

11.     Ardian, Tartakovsky, Yeninas and Green, directly or indirectly, singly or in concert, have made use of the means or instrumentalities of transportation or communication in, or the instrumentalities of, interstate commerce, or of the mails, in connection with the transactions, acts, practices, and courses of business alleged in this complaint.

## THE DEFENDANTS

12.     Ardian is a division of Gourmet Times, Ltd. ("Gourmet Times"), a Delaware corporation. (Ardian and Gourmet Times share the same tax identification number.) Ardian has its principal place of business in Long Island City, New York. Ardian commenced business in approximately August 2001. Ardian is purportedly in the business of providing commercial

financial services, and specifically short-term financing, including factoring and check-cashing

services for small businesses.  According to the POM, Ardian intends to focus primarily on the

following industry segments: (1) cashing checks from food industry suppliers needing immediate

cash at a discount of between 3% and 5%; and (2) providing interim financing to its clients for

equipment leasing while permanent financing is being arranged.  In approximately October 2001,

Ardian commenced a private placement of its securities.  (In its POM, Ardian states that it is

offering the stock and warrants of Gourmet Times to investors.  This complaint will refer to these

securities as Ardian securities.)  To date, Ardian has sold securities to at least 70 investors, and

has raised at least $1.2 million.

13.     Tartakovsky, age 31, a resident of Fair Lawn, New Jersey, is the President of

Ardian.

14.     Yeninas, age 28, a resident of Queens, New York, was formerly a broker (or

registered representative) at a branch office of Castle Securities, Inc., a registered broker-dealer.

Yeninas offered and sold Ardian securities to investors.

15.     Green, age and residence unknown, is purportedly a "Senior Financial

Consultant" to Ardian.  Green is not associated with a registered broker or dealer, or otherwise

registered as a broker.  Green offered and sold Ardian securities to investors.


**THE RELIEF DEFENDANT**


16.     JBS is a New Jersey corporation with its principal place of business in Brooklyn,

New York.  The only officer and director of JBS is John B. Swift ("Swift").  JBS claims to invest

in commercial real estate and purportedly used funds obtained from Ardian to finance commercial real estate transactions.  Since November 29, 2001, Ardian has transferred investor funds to JBS.

## FACTS

### Ardian Conducted an Unregistered Offering of its Securities

17.     In approximately October 2001, Ardian commenced an offering of its securities to investors.

18.     In connection with this Offering, Simone Palazzolo ("Palazzolo"), Ardian's general counsel, drafted the POM.  (There were two versions of the POM, with the original version being superseded by a subsequent version.  Both versions contain the material misrepresentations detailed below.)  Palazzolo, who has previously been enjoined from violating the registration and antifraud provisions of the federal securities laws (SEC v. RW Technology, et al., No. N-89-486-WWE (D. Ct. 1989)), drafted the POM based on information that Tartakovsky provided.

19.     According to Ardian's POM, Ardian intended to offer 1,000 units with each unit consisting of 2,000 shares of Gourmet Times common stock and 2,000 warrants, at $5,000 per unit.  (As noted previously, the complaint refers to these securities as Ardian securities.)

20.     Ardian provided the POM to some, but not all, investors.

21.     Ardian did not file a registration statement for its sales of securities, and a registration statement was not otherwise in effect.

22.     Rather, Ardian's Offering was purportedly made pursuant to Rule 506 of

Regulation D, 17 C.F.R. § 230.506.

23.     As of June 14, 2002, Ardian's offices in Long Island City consisted of two small rooms. Outside the office, there was a sign that misspelled the name of the company as "Aridan." Inside, in one room, there was a table that contained six telephones and "lead cards." Individuals used these phones and the lead cards to cold-call investors and solicit them to purchase Ardian securities.

24.     To date, Ardian has raised at least $1.2 million from approximately 70 investors. These investors reside in at least 31 states.

**Ardian Misrepresented Material Facts in Its POM**

25.     Ardian's POM represented that Ardian had a "matching fund commitment by an unrelated third party financing institution" to provide additional funding to Ardian. Specifically, Ardian claimed that it had an agreement with an unidentified company that provided that "the company will be able to borrow on a matching basis to its own capital for financing operations."

26.     This representation was materially false and misleading. Ardian has never had any such matching fund agreement with a third party financing institution.

27.     Ardian's POM represented that "[p]resently, the Company is largely dependent upon the personal efforts of its current management, the loss of any of which would have a material adverse effect upon the Company's business and prospects." The POM represented Ardian's management to be Tartakovsky (President and a Director), Marconi (its Secretary, Vice President, and a Director) and Rezhets (a Director). The POM also contained biographies of both Rezhets and Marconi, and claimed they had been serving as officers and/or directors of Ardian since its inception.

7

28.     These representations were materially false and misleading.  To date, Marconi and Rezhets have not performed any services for Ardian.  In fact, Rezhets informed the Commission staff that he had never even heard of Ardian.

29.     In its POM, Ardian indicated that it planned to provide short term financing, including factoring services, to clients.

30.     According to Tartakovsky and promissory notes, Ardian has purportedly loaned $385,000 to JBS in four transactions: (1) November 29, 2001, $85,000; (2) February 12, 2002, $150,000; (3) June 17, 2002, $100,000; and (4) June 20, 2002, $50,000.

31.     According to Swift, the President of JBS, Ardian provided financing in an amount substantially less than the amounts reflected in the purported promissory notes.   Although JBS claims to invest in commercial real estate, Swift could not identify a specific real estate project that Ardian helped finance.

32.     Additionally, Ardian provided JBS with cash funds.  Despite Ardian's claim that it provided factoring services for its clients, Ardian financed JBS by cashing Ardian's investors checks at another factoring service, G.S. Capital, Inc. ("GS").  Ardian failed to disclose in its POM, or otherwise, that Ardian, which describes itself, in part, as a factor, would have to use a competitor factoring service to provide cash to clients.

**Ardian Hired Salespersons to Sell Ardian Securities**

33.     In connection with the Offering, Ardian paid, directly or indirectly, numerous salespeople commissions to sell Ardian securities to investors.  For instance, Ardian paid

8

Yeninas, Green, and others, commissions to sell Ardian securities.

34.     Green, a telemarketer, corresponded with investors using Ardian letterhead. Green also had a business card describing himself as an Ardian "Senior Financial Consultant."

35.     The salespeople, including Yeninas and Green, actively solicited investors, and offered and sold Ardian securities to them.

36.     Yeninas and Green used lists of investors purchased from commercial services to cold-call individuals with whom they had no prior relationship.  Yeninas and Green then offered and sold Ardian securities to these individuals.

37.     Yeninas and Green and the other salespeople concocted various alleged facts to convince investors to purchase Ardian securities.

38.     For instance, Yeninas and Green both represented to investors that Ardian was about to conduct an initial public offering ("IPO") on a date certain.

39.     Specifically, in early March 2002 Yeninas solicited Investor Russell Thornton to purchase Ardian securities.  Yeninas told Thornton that the company was going to go public through an IPO in June or July 2002.

40.     In or around April 2002, Green told Investor John Schwartz ("Schwartz") that he had an investment opportunity for Schwartz in Ardian, which was planning to conduct an IPO at the end of May 2002.

41.     The representations described in paragraphs 38 through 40 were materially false and misleading.  Ardian never took any significant steps to offer its securities in an IPO.

42.     Yeninas and Green both made baseless price predictions that Ardian securities would increase in price.

9

43.     For instance, in October or November 2001, Yeninas told Investor Robert Patrick ("Patrick") that Ardian would conduct an IPO by the end of 2001 and the shares would then be worth $6-7 per share, and that Patrick could sell his shares on the first day that the stock was publicly traded.

44.     Green told Schwartz that once Ardian went public, he expected the stock to be worth $5-7 per share.

45.     The representations described in paragraphs 42 through 44 were materially false and misleading. Yeninas and Green had no reasonable basis to predict the future value of Ardian's stock.

46.     Yeninas also told investors that purchased stock in the Offering that their shares were freely tradable. For example, Yeninas told Patrick that his shares would be freely tradeable on the first day the stock was publicly traded, which would be by the end of 2001.

47.     The representations described in paragraph 46 were materially false and misleading. According to the POM, the Ardian stock purchased in the Offering was restricted and could not be sold for one year.

48.     Yeninas told investors that Ardian was financing a company involved in the clean up at Ground Zero. For example, Yeninas told Patrick that Ardian had leased the majority of the cranes, bulldozers, and earth moving equipment to contractors working at Ground Zero. In May or June 2002, Yeninas also told Investor Michael Heck that Ardian, which was a big conglomerate, was financing a company involved in the clean up at Ground Zero.

49.     The representations described in paragraph 48 were materially false and misleading. Ardian did not provide financing to any company involved in the clean up at Ground

Zero following the September 11, 2001 terrorist attacks.

50.     Green told investors that after Ardian stock became publicly traded, they could sell their shares, and then roll-over their profits into an upcoming billion dollar IPO of Kinko's. For instance, Green told Schwartz that by investing in Ardian, Schwartz would then be able to get in on the IPO of Kinko's, which was his next deal.

51.     The representations described in paragraph 50 were materially false and misleading. According to its website, Kinko's currently "has no concrete plans for a public stock offering."

11

## FIRST CLAIM FOR RELIEF

Violations of Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a),
Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b),
and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5
Against Ardian, Tartakovsky, Yeninas and Green

52.    The Commission repeats and realleges the allegations contained in paragraphs 1
through 51 by reference as if fully set forth herein.

53.    Ardian, Tartakovsky, Yeninas and Green, directly and indirectly, singly and in
concert, knowingly or recklessly, by the use of the means or instruments of transportation or
communication in, and the means or instrumentalities of, interstate commerce, or by the use of
the mails, in the offer or sale, and in connection with the purchase or sale, of securities, have: (a)
employed devices, schemes or artifices to defraud; (b) obtained money or property by means of,
or otherwise made untrue statements of material fact, or omitted to state material facts necessary
to make the statements, in light of the circumstances under which they were made, not
misleading; and (c) engaged in transactions, acts, practices and courses of business which
operated or would operate as a fraud or deceit upon purchasers of securities or other persons.

54.    As part, and in furtherance, of this violative conduct, Ardian and Tartakovsky
made the misrepresentations alleged above in paragraphs 1, 2, 25 through 28.

55.    As part, and in furtherance, of this violative conduct, Yeninas made the
misrepresentations alleged above in paragraphs 1, 3, 4, 37 through 39, 41 through 43, and 45
through 49.

56.    As part, and in furtherance, of this violative conduct, Green made the

12

misrepresentations alleged above in paragraphs  1, 3, 37, 38, 40 through 42, 44, 45, 50, and 51.

57.     The misrepresentations made by Ardian, Tartakovsky, Yeninas and Green described above were material.

58.     Ardian, Tartakovsky, Yeninas and Green knew, or were reckless in not knowing, that these material misrepresentations were false or misleading.

59.     By reason of the acts, omissions, practices, and courses of business set forth in this complaint, Ardian, Tartakovsky, Yeninas and Green have violated, are violating, and unless restrained and enjoined, will continue to violate, Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

## SECOND CLAIM FOR RELIEF

Violations of Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. § 77e(a) and (c)
Against Ardian, Tartakovsky, Yeninas and Green

60.     The Commission realleges and incorporates paragraphs 1 through 51 by reference as if fully set forth herein.

61.     Ardian, Tartakovsky, Yeninas and Green, directly and indirectly, singly and in concert, have made use of the means or instruments of transportation or communication in interstate commerce, or of the mails, to offer and sell securities through the use or medium of a prospectus or otherwise when no registration statement has been filed or was in effect as to such securities and when no exemption from registration was available.

62.     By reason of the foregoing, Ardian, Tartakovsky, Yeninas and Green violated, are

13

violating, and unless restrained and enjoined, will continue to violate, Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. § 77e(a) and (c).

### THIRD CLAIM FOR RELIEF

Violations of Section 15(a) of the Exchange Act

Against Green

63.     The Commission realleges and incorporates paragraphs 1 through 51 by reference as if fully set forth herein.

64.     Green, in connection with the offer or sale of securities, by the use of the means or instrumentalities of interstate commerce or by use of the mails, effected transactions in, or induced or attempted to induce the purchase or sale of, securities, including Ardian securities, without being registered as a broker with the Commission.

65.     By reason of the foregoing, defendant Green violated, is violating, and unless restrained and enjoined, will continue to violate Section 15(a) of the Exchange Act, 15 U.S.C. § 78o(a).

### FOURTH CLAIM FOR RELIEF

JBS As a Relief Defendant

66.     The Commission realleges and incorporates the allegations contained in paragraphs 1 through 51 above.

67.     JBS has received funds from Ardian and Tartakovsky during the period August 1, 2001 through the present, which funds are the proceeds of the unlawful activities of Ardian.

14

68.   JBS has obtained the funds alleged above as part, and in furtherance, of the securities violations alleged in paragraphs 1 through 51, and under circumstances in which it is not just, equitable or conscionable for JBS to retain the funds.  As a consequence of the foregoing, relief defendant JBS has been unjustly enriched.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Commission respectfully requests that this Court issue:

### **I.**

Orders temporarily and preliminarily, and Final Judgments permanently, restraining and enjoining Ardian, Tartakovsky, Yeninas and Green, their agents, servants, employees, attorneys in-fact, and all persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, and each of them, from violating Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

### **II.**

Orders temporarily and preliminarily, and Final Judgments permanently, restraining and enjoining Ardian, Tartakovsky, Yeninas and Green, their agents, servants, employees, attorneys in-fact, and all persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, and each of them, from violating Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. § 77e(a) and (c).

15

### III.

Orders temporarily and preliminarily, and a Final Judgment permanently, restraining and enjoining Green, his agents, servants, employees, attorneys in-fact, and all persons in active concert or participation with him who receive actual notice of the injunction by personal service or otherwise, from violating Section 15(a) of the Exchange Act, 15 U.S.C. § 78o(a).

### IV.

An Order directing that Ardian's assets be frozen.

### V.

An Order directing Ardian and JBS to each file with this Court and serve upon the Commission verified written accountings, signed by each of them under penalty of perjury.

### VI.

An Order permitting expedited discovery.

### VII.

An Order enjoining and restraining Ardian, Tartakovsky, Yeninas, Green and JBS, and any person or entity acting at their direction or on their behalf, from destroying, altering, concealing, or otherwise interfering with the access of the Commission to relevant documents, books and records.

### VIII.

A Final Judgment requiring Ardian, Tartakovsky, Yeninas and Green to disgorge their ill-gotten gains from the violative conduct alleged in this complaint, and to pay prejudgment interest thereon.

16

## IX.

A Final Judgment imposing civil monetary penalties pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d), against Tartakovsky, Yeninas and Green.

## X.

A Final Judgment requiring JBS to disgorge all investor funds unlawfully diverted to it by the Defendants.

## XI.

Such other and further relief as the Court deems appropriate.

Dated:  August _6_, 2002

New York, New York

Respectfully Submitted,

Mark Schonfeld (MS-2798)
Attorney For Plaintiff
SECURITIES AND EXCHANGE
COMMISSION
Northeast Regional Office
233 Broadway
New York, New York 10279
(646) 428-1510

Of Counsel:

Wayne Carlin
Kay L. Lackey
Bennett Ellenbogen
Jonathan Roberts
James C. Gange